**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 12-236** |
| : | |
| **v.** : | |
| : | |
| **TIMOTHY MCGEE** : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                 **September 12, 2012**

      Defendant Timothy McGee, who is charged in a two-count indictment with insider trading in violation of § 10(b) of the Securities Exchange Act of 1934[1] and Securities and Exchange Commission ("SEC") Rules 10b-5 and 10b5-2,[2] and perjury,[3] has moved to dismiss the securities fraud count. He contends that the indictment does not sufficiently allege the existence of a confidential relationship essential to an insider trading offense based upon a misappropriation theory of liability, and that the SEC exceeded its rulemaking authority when it promulgated Rule 10b5-2, broadly defining the nature of the relationship required to impose liability under the misappropriation theory. Alternatively, he contends that the rule is void for vagueness.

      Opposing the motion, the government argues that the indictment sufficiently alleges a crime under both the insider trading statute and Rule 10b5-2. It also maintains that the rule was a valid exercise of the SEC's rulemaking authority granted by Congress.

      We conclude that the indictment sufficiently alleges the elements of an offense under § 10(b) and Rule 10b-5, and sufficiently alleges facts making out a relationship of

---

[1] 15 U.S.C. § 78j (2006).

[2] 17 C.F.R. § 240.10b-5 (2012) and 17 C.F.R. § 240.10b5-2 (2012), respectively.

[3] 18 U.S.C. § 1621 (2006).

trust or confidence as defined in Rule 10b5-2, which was validly promulgated by the SEC pursuant to its congressionally-delegated rulemaking authority. Therefore, we shall deny the motion to dismiss.

**The Indictment**

The indictment charges that McGee used confidential, nonpublic information he obtained from a corporate insider during the course of a confidential relationship between himself and the source of the information. According to the indictment, in July, 2008, McGee obtained information about the pending acquisition of Philadelphia Consolidated Holding Corporation ("PHLY"), a company publicly traded on the NASDAQ, from a senior executive at PHLY involved in the merger process. It further alleges that McGee used the information to purchase 10,750 shares of PHLY stock, which were sold for a $292,128.00 profit after the public announcement of the pending acquisition. He also tipped his friend and co-worker who in turn tipped others. Like McGee, those who received the nonpublic information about the pending acquisition also purchased and later sold PHLY stock for a profit.

The indictment recites that McGee and his source of the information, the senior PHLY executive, were members of Alcoholics Anonymous ("AA"). They formed a close personal relationship, which engendered mutual trust and confidence arising out of their AA membership. During a confidential conversation, the executive revealed that he was under a great deal of stress as a result of the pending acquisition of PHLY by another company, Tokio Marine Holdings, Inc. As a result of the stress, he was struggling with his alcoholism.

According to the indictment, McGee had an "agreement to keep confidential information learned from fellow AA members,"[4] and that he "knew and reasonably should have known that the Executive expected that MCGEE would maintain the confidentiality of any material nonpublic information MCGEE learned from the Executive."[5]

**Bases of Insider Trading Liability**

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (2006), proscribes using a deceptive device in connection with the purchase or sale of securities in contravention of rules prescribed by the SEC. Pursuant to this Congressional delegation, the SEC promulgated Rule 10b-5, 17 C.F.R. § 240.10b-5. The Rule proscribes, in relevant part, "employ[ing] any device, scheme, or artifice to defraud" or "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(a), (c).

There are two bases for insider trading liability under § 10(b) and Rule 10b-5. The "traditional" or "classical theory" applies where a corporate insider trades in securities of the corporation using material, nonpublic information he obtained as a result of his insider position. *United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997). An insider is anyone connected to the corporation, including not only officers, directors and employees, but also those working in a fiduciary capacity for the corporation, such as attorneys and

---

[4] Indictment ¶ 20.

[5] Indictment ¶ 8.

3

accountants. *Id.* (citing *Dirks v. SEC*, 463 U.S. 646, 655 n.14 (1983)). The "misappropriation theory" holds an outsider liable. It applies to one who, while owing a duty of loyalty and confidentiality to the insider source of the information, uses that nonpublic information to trade in securities. *O'Hagan*, 521 U.S. at 652. The difference between the two theories is that the traditional theory is based on the defendant's relationship to the corporation, whereas the misappropriation theory focuses on the defendant's relationship to the insider, not the corporation.

Both bases of liability are premised on deception and a breach of duty. *Id.* In the traditional scenario, the insider deceives the corporation and breaches his duty to the corporation's shareholders with whom he has a fiduciary relationship. *Id.* In the misappropriation setting, the person using the information deceives the source of the information, breaching his duty of loyalty and confidentiality to that person. *Id.* The deception occurs when the confidant fails to disclose to the source that he intends to rely on the nonpublic information to trade in the securities or share the information with others. *Id.* at 652-53.

Determining who is an insider for purposes of applying the classical theory of § 10(b) liability poses little difficulty and is typically self-evident. One's employment position or professional relationship to the corporation usually makes it an easy task. Who is a confidant under the misappropriation theory is not always as simple and apparent. Indeed, whether one was in a requisite relationship has produced conflicting decisions. *Compare, e.g.*, *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1147, 1151 (N.D. Ill. 2003) (finding that because the defendant and insider were members of a business roundtable that had an express policy and understanding that business discussions were to be kept confidential, the

defendant owed the insider a duty sufficient to impose misappropriation theory liability), *with United States v. Kim*, 184 F. Supp. 2d 1006, 1008, 1012 (N.D. Cal. 2002) (finding that although the defendant and insider signed confidentiality agreements as members of a business organization, the defendant lacked the requisite duty to impose liability for tipping others and trading on nonpublic information shared by the insider). Because the recipient of the information under the misappropriation theory is not an insider, but actually an outsider, the contours of the relationship must be carefully scrutinized.

Following the Supreme Court's approval of the misappropriation theory in *O'Hagan*, the SEC promulgated Rule 10b5-2, 17 C.F.R. § 240.10b5-2, to clarify the types of relationships giving rise to a duty of trust or confidence. Selective Disclosure and Insider Trading, 64 Fed. Reg. 72590, 72602 (Dec. 28, 1999). The Rule codified a non-exhaustive list of "duties of trust or confidence," the breach of which can form the basis of liability under the misappropriation theory. The duty arises where there is an agreement to keep the information confidential, *id.* at § 240.10b5-2(b)(1); when the parties to the communication have "a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material nonpublic information expects that the recipient will maintain its confidentiality," *id.* at § 240.10b5-2(b)(2); or where the information is shared with a spouse, parent, child, or sibling. *Id.* at § 240.10b5-2(b)(3).

**Validity of Rule 10b5-2**

Because McGee is charged under this rule, we start our analysis by considering his argument that Rule 10b5-2 is invalid. McGee argues that Rule 10b5-2 is an unlawful

5

extension of § 10(b). He contends that the Supreme Court has interpreted § 10(b)'s "deceptive device" language to require the breach of a recognized fiduciary or fiduciary-like duty. According to McGee, insofar as Rule 10b5-2 imposes a duty based on a confidentiality agreement, Rule 10b5-2(b)(1), or a history, pattern, or practice of sharing confidences, Rule 10b5-2(b)(2), it impermissibly "expands insider trading liability beyond what the Supreme Court has found Section 10(b) prohibits."[6] In other words, he argues that the Rule impermissibly includes non-fiduciary relationships not previously recognized as triggering a duty of trust or confidence.

The government, relying on Congress's express delegation in § 10(b), counters that the Rule is entitled to *Chevron* deference. It argues that the Rule is consistent with § 10(b)'s requirements and is the product of a valid exercise of the SEC's authority.

Where Congress has authorized an agency to administer a statute, the agency's interpretation of the statute is entitled to deference. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984). If the statute expressly delegates rulemaking authority to the agency, the agency's interpretation must be given effect as long as it is based on a permissible reading of the statute. *Id.* at 843.

In § 10(b), Congress expressly delegated to the SEC the authority to define a criminal offense. The statute provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and

---

[6] Mem. of Timothy J. McGee in Supp. of Mot. to Dismiss Count One of the Indictment ("McGee Mem.") at 13.

6

regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

The Supreme Court in *O'Hagan* recognized this delegation in approving the misappropriation theory. 521 U.S. at 650-51; *see also Loving v. United States*, 517 U.S. 748, 767 (1996) (observing that the Supreme Court has "upheld delegations whereby the Executive or an independent agency defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered by the statute'" (quoting *United States v. Grimaud*, 220 U.S. 506, 518 (1911)).

McGee argues that although the statute left a gap for the SEC to fill, the Supreme Court in *O'Hagan* filled it by defining the relationship required to trigger liability under §10(b) as a recognized, fiduciary or fiduciary-like relationship. Consequently, McGee maintains that the SEC, in implementing Rule 10b5-2, impermissibly expanded misappropriation liability by adding relationships that impose a duty of trust or confidence beyond what the Supreme Court defined in *O'Hagan*. This is not a novel argument. It has been made and rejected in numerous cases. *See, e.g.*, *SEC v. Cuban*, 620 F.3d 551, 555 (5th Cir. 2010).

We disagree with McGee and agree with the courts of appeal who have rejected this argument, holding that the predicate relationship is not always a recognized, fiduciary relationship in the pure legal sense. "*O'Hagan* did not set the contours of a relationship of 'trust and confidence' giving rise to the duty to disclose or abstain and misappropriation liability." *Id.*; *see also SEC v. Dorozhko*, 574 F.3d 42, 49 (2d Cir. 2009) ("*Chiarella*,

*O'Hagan*, and *Zandford* all stand for the proposition that nondisclosure in breach of a fiduciary duty satisfies § 10(b)'s requirement for a deceptive device or contrivance. However, what is sufficient is not always what is necessary, and none of the Supreme Court opinions considered by the District Court *require* a fiduciary relationship as an element of an actionable securities claim under Section 10(b)." (internal quotations and alterations omitted)); *SEC v. Yun*, 327 F.3d 1263, 1271, 1273 n.23 (11th Cir. 2003) (noting that prior to Rule 10b5-2, "it [was] unsettled whether non-business relationships, such as husband and wife, provide the duty of loyalty and confidentiality necessary to satisfy the misappropriation theory" and holding that the breach of an agreement to maintain business confidences or a history of sharing business confidences suffices to yield insider trading liability). Indeed, McGee concedes in his motion to dismiss that the *O'Hagan* Court "did not elaborate on the requisite relationship giving rise to the duty and deception."[7] Because Congress delegated rulemaking authority under § 10(b) to the SEC and *O'Hagan* did not preclude the SEC from defining the relationship of trust or confidence, we proceed to step two of the *Chevron* analysis.

Where, as here, Congress has explicitly delegated rulemaking authority to effectuate a statute, rules promulgated pursuant to that authority are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44; *Astrue v. Capato*, __ U.S. __, 132 S. Ct. 2021, 2034 (2012) (same); *see also O'Hagan*, 521 U.S. at 673-75 (applying the "arbitrary, capricious, or manifestly contrary to the statute" standard and upholding an SEC rule promulgated pursuant to § 14(e) of the

---

[7] McGee Mem. at 6.

Exchange Act). After examining the SEC's justification for the rule and evaluating it in light of § 10(b), we conclude that the Rule is not arbitrary, capricious, or manifestly contrary to the statute.[8]

The SEC recognized that following *O'Hagan*'s approval of the misappropriation theory, "[i]t [was] not as settled . . . under what circumstances certain non-business relationships, such as family and personal relationships, may provide the duty of trust or confidence required under the misappropriation theory." Selective Disclosure and Insider Trading, 64 Fed. Reg. 72590, 72602 (Dec. 28, 1999). It observed that courts following a more restrictive view do not "fully recognize the degree to which parties to close family and personal relationships have reasonable and legitimate expectations of confidentiality in their communications." *Id*. Absent additional rulemaking, those with reasonable expectations of confidentiality may not have a breach of such expectations vindicated. The SEC's inability to challenge an investor's use of material nonpublic information in breach of a duty of trust or confidence stemming from personal or family relationships harmed investors and the integrity of securities markets. *Id.* at 72603. The SEC's response to these concerns was to create a non-exhaustive list of categories of relationships giving rise to a duty of trust or confidence. It did so by promulgating Rule 10b5-2.

We agree with the reasoning in *United States v. Corbin*, 729 F. Supp. 2d 607 (S.D.N.Y. 2010). The district court found that the SEC's rulemaking was "buttressed by a thorough and careful consideration – one that far surpasses mere reasonableness – of the ends of § 10(b), the state of the current insider trading case law . . . and the need to protect

---

[8] This methodology parallels that used in *O'Hagan* to analyze an SEC rule promulgated pursuant to an express delegation by Congress. *See O'Hagan*, 521 U.S. at 674-75.

investors. *Id.* at 619. *But cf. SEC v. Cuban*, 634 F. Supp. 2d 713, 731 (N.D. Tex. 2009) (holding that "permit[ing] liability based on Rule 10b5-2(b)(1) would exceed the SEC's § 10(b) authority to proscribe conduct that is deceptive," without discussing or applying *Chevron* deference) (citation omitted), *rev'd on other grounds*, 620 F.3d 551 (5th Cir. 2010).

McGee argues that *Corbin* is not persuasive because it rests upon a *Chevron* analysis, which is inappropriate under *United States v. Home Concrete & Supply, LLC*, __U.S. __, 132 S. Ct. 1836 (2012).[9] This argument ignores the Supreme Court's central holding in *Nat'l Cable and Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005), and is based on a misapprehension of *Home Concrete*.

According to *Brand X*, "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id*. Even if Rule 10b5-2 conflicted with prior Supreme Court precedent, which it did not, we would still need to determine whether the Court's prior interpretation was based on the unambiguous terms of the § 10(b). It was not. Hence, Chevron deference would still apply.

*Home Concrete* does not modify *Brand X*'s holding and is of no help to McGee. Four of the five Justices that joined the majority in *Home Concrete* did so because the Court's prior interpretation followed from the statute's *unambiguous* terms. *See* 132 S. Ct. at 1843-44 (Breyer, J., plurality) (observing that the Supreme Court's prior interpretation

---

[9] Supplemental McGee Mem. at 8-9, 11-12.

of the statute was based on its view that the statute left no gap for the agency to fill). Thus, consistent with *Brand X*, the Court's prior interpretation controlled.

Subsections 10b5-2(b)(1) and (2) are not manifestly contrary to § 10(b) because they are consistent with the statute's requirement that the defendant used a "deceptive device." *See O'Hagan*, 521 U.S. at 651 ("Liability under Rule 10b-5, our precedent indicates, does not extend beyond conduct encompassed by § 10(b)'s prohibition."). The deception occurs when the misappropriator betrays the insider's trust that the material nonpublic information will be safeguarded, based on either an agreement to maintain confidences, 10b5-2(b)(1), or a history of sharing and maintaining confidences. 10b5-2(b)(2).

In holding that subsections (b)(1) and (2) of Rule 10b5-2 are not arbitrary, capricious or manifestly contrary to § 10(b), we join the numerous courts that have rejected challenges to the Rule and those that have held that a relationship of trust or confidence may be based on either an agreement or a history of sharing and maintaining confidential information. *See Yun*, 327 F.3d at 1273 and n.23 (holding that "the existence of a duty of loyalty and confidentiality turn[ed] on whether [the insider-husband] granted his [allegedly misappropriating-wife] access to confidential information in reasonable reliance on a promise that she would safeguard the information" and noting that this interpretation of the duty was bolstered by the SEC's preliminary statement of Rule 10b5-2); *United States v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001) (noting that an "explicit acceptance of a duty of confidentiality" could form the basis of the functional equivalent to a fiduciary relationship); *SEC v. Northern*, 598 F. Supp. 2d 167, 174 (D. Mass. 2009) (relying on "persuasive caselaw holding that Rule 10b5-2(b) properly defines those circumstances under which

misappropriation liability can arise" to reject the argument that the rule is invalid as an improper expansion of liability under § 10(b)) (citations omitted); *SEC v. Lyon*, 529 F. Supp. 2d 444, 452 (S.D.N.Y. 2008) (holding that the SEC alleged facts with requisite specificity to plausibly support its claim that a confidential relationship arose by agreement between the insider and the alleged misappropriator); *SEC v. Kornman*, 391 F. Supp. 2d 477, 489-90 (N.D. Tex. 2005) (denying motion to dismiss because the complaint contained allegations supporting the existence of a confidentiality agreement, thus bringing the case within Rule 10b5-2(b)(1)); *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1147, 1151 (N.D. Ill. 2003) (finding the existence of a fiduciary-like relationship and attendant duty where the defendant traded on nonpublic information he gleaned as a member of a business roundtable, which had an express policy and understanding that such matters were to be kept confidential).

In summary, Rule 10b5-2 was promulgated by the SEC in the exercise of the authority granted to it by Congress. Because the Rule was neither arbitrary nor capricious, nor manifestly contrary to the statute, it is entitled to deference. Therefore, we hold that it is valid.

**Vagueness Challenge**

McGee makes a two-fold due process argument in challenging Rule 10b5-2. First, he maintains that the Rule is so vague that "no one possibly could know in advance whether the law would be violated."[10] Second, he argues that this concern is why the

---

[10] McGee Mem. at 13 n.6.

*O'Hagan* Court limited liability under the misappropriation theory to those who breach a "recognized duty."[11] According to McGee, because the rule is indefinite and does not codify a previously "recognized" duty, he had no notice that he was engaging in illegal behavior.[12]

Due process demands that a statute or rule must clearly define prohibitions. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Otherwise, it is void for vagueness. *Id.* The statute or rule must give a "person of ordinary intelligence" notice of what is prohibited. *Id.*; *United States v. Fontaine*, __ F.3d __, No. 11-2602, 2012 WL 3667228, at *3 (3d Cir. Aug. 28, 2012) (citations omitted). In other words, one must know that what he is doing is unlawful. *Grayned*, 408 U.S. at 108; *see also United States v. Moyer*, 674 F.3d 192, 211 (3d Cir. 2012) ("In criminal cases, because vagueness attacks are based on lack of notice, they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk of punishment under the statute." (internal quotation marks and citations omitted)).

Because Rule 10b5-2 does not involve a First Amendment right, we examine whether it is vague as applied to McGee. *Fontaine*, 2012 WL 3667228, at *3 (quotations omitted); *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." (citation omitted)). In so doing, we apply the canons of statutory construction. *Fontaine*, 2012 WL

---

[11] *Id.* (quoting *O'Hagan*, 521 U.S. at 666).

[12] These arguments are not fully developed in McGee's briefs. Nonetheless, he amplified his position during oral argument.

13

3667228, at *3 n.10 (citation omitted). Where terms are not otherwise defined in the statute or rule, we construct the terms according to their ordinary meaning. *Id.* at *3 (quoting *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994)).

Rule 10b5-2 is clear as applied to McGee's alleged relationship with the insider. According to the Rule, if McGee agreed to maintain information in confidence or had a history of sharing and maintaining confidential information with the insider, he and the insider had a relationship of trust or confidence. Rule 10b5-2(b)(1) and (2). The indictment alleges that McGee agreed to keep information shared by members of AA confidential,[13] McGee and the insider had a history of sharing and maintaining confidences[14] and McGee understood that the insider shared information about PHLY's pending sale in confidence.[15] Assuming the facts alleged in the indictment are true, a person of ordinary intelligence would understand that McGee and the insider shared a relationship of trust or confidence as defined by Rule 10b5-2(b)(1) and (2).

McGee's reliance on *O'Hagan*'s limitation of the misappropriation theory to the breach of a "recognized duty" ignores that the SEC defined the contours of the duty of trust or confidence in Rule 10b5-2 in response to *O'Hagan*. Indeed, McGee admitted at oral argument that the Supreme Court is not the only source that can recognize a duty.[16] *Cf. United States v. Lanier*, 520 U.S. 259, 268-69 (1997) (holding that the Supreme Court is not the only source for defining an established constitutional right in determining whether

---

[13] Indictment ¶¶ 6-7.

[14] Indictment ¶ 7-8.

[15] Indictment ¶ 15.

[16] Mot. to Dismiss Hr'g Tr. at 5 (Aug. 7, 2012).

14

the defendant had notice that his actions violated the plaintiff's constitutional rights).  Since its promulgation, the Rule has also served as the basis for criminal and civil liability in numerous enforcement actions, including several cited in this opinion.

Bolstering our conclusion that the Rule is not vague is the requirement that the government must prove that McGee acted with scienter.  "[T]he constitutionality of a vague statutory standard is closely related to whether the standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979).  The Court has long "recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

In approving the misappropriation theory, the *O'Hagan* Court emphasized that the scienter requirements for liability under Rule 10b-5 provide "two sturdy safeguards," which were "vital to [the Court's] decision that criminal liability may be sustained under the misappropriation theory." *O'Hagan*, 521 U.S. at 665.  First, to establish a criminal violation of Rules 10b-5 and 10b5-2, the government must prove that McGee acted "willfully." *Id.* at 665-66 (citing 15 U.S.C. § 78ff(a)).  Consequently, the government must demonstrate beyond a reasonable doubt that McGee "acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (defining "willful"). Second, McGee may not be imprisoned for violating Rule 10b5-2 "if he proves that he had no knowledge of the Rule." *O'Hagan*, 521 U.S. at 666; *see also* 15 U.S.C. § 78ff(a) ("[N]o person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation."). Neither the text of Rule 10b5-2 nor its application against McGee violates the Due Process Clause.

Therefore, we shall turn to McGee's challenge to the sufficiency of the indictment.

## Sufficiency of the Indictment

To withstand a motion to dismiss, an indictment must set forth the elements of the charged offense and contain sufficient allegations to fairly inform the defendant of the charge against him so that he may defend against it. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 117-18 (1974)). The indictment need only track the language of the statute and allege a date and place of the alleged crime. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citation omitted). A court does not review the sufficiency of the evidence at the motion to dismiss stage. *Id.* (citation omitted). That review is conducted at the close of the government's case at trial. *Id.*; Fed. R. Crim. P. 29(a).

Here, the indictment passes the sufficiency test to survive McGee's motion to dismiss. It delineates the elements of the offense. It does more than mimic the language of the statute and the rule. It also alleges when, where and how he committed the offense.

The allegations are sufficient to put McGee on notice of what he must defend. They inform him that the government contends there was an agreement, arising out of the AA program's traditions and reminders at meetings, to maintain confidences among members; a relationship of trust and confidence existed between him and his source; there was a history and pattern of shared confidences; the material nonpublic information regarding the pending sale of the company was revealed in a confidential conversation in the course of the relationship; and, McGee used the information for his own pecuniary benefit and to tip a friend. The indictment also recites the necessary elements of the charge.

Whether such a confidential relationship existed and whether the information was disclosed within the confines of that relationship are questions of fact. These determinations are for a jury, not a court, to decide. Therefore, the motion to dismiss will be denied.